**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210114-U

Order filed February 1, 2022
_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| JACE J. BIEWER, | ) | La Salle County, Illinois. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Appeal No. 3-21-0114 |
| and | ) | Circuit No. 11-D-430 |
| | ) | |
| HEIDI M. BIEWER, | ) | |
| | ) | Honorable Michelle A. Vescogni, |
| Respondent-Appellee. | ) | Judge, Presiding. |
_____

JUSTICE SCHMIDT delivered the judgment of the court.
Presiding Justice O'Brien concurred in the judgment.
Justice McDade, specially concurred.

**ORDER**

¶ 1    *Held*:  The trial court did not err when it denied petitioner's petition to modify child support. petitioner's challenge to the court's contempt order is moot.

¶ 2    Petitioner, Jace J. Biewer, appeals an order denying his petition to modify child support obligations to respondent, Heidi M. Biewer. Jace also challenges the court's decision finding him in indirect civil contempt. We affirm.

## I. BACKGROUND

The parties were married on January 22, 2009. They have one child, B.B., born March 17, 2010. On January 23, 2012, the court entered a judgment for dissolution of marriage. The judgment required Jace to pay Heidi $75 per week in child support. In 2016, Heidi filed a petition to modify Jace's child support obligation. Following a hearing, the court increased Jace's obligation. Jace's only source of income came from a trust in which he was the sole beneficiary. The court found that Jace received $76,035.12 ($6336.26 monthly) in net income from the trust in 2016. Based on this, the court set Jace's child support obligation at $1267. The court ordered Jace to direct the trust to disburse the child support payments to Heidi. Payments began on April 10, 2017. Jace did not appeal the decision.

On September 18, 2019, Jace filed a petition for modification of his child support obligation. The petition alleged a material and substantial change in circumstances which necessitated a modification of his child support obligation. Jace claimed his only source of income came from the trust administered by Hometown National Bank. The bank decreased his distribution, and he only received $695 from the trust each month. As such, Jace claimed that his child support obligation should be reduced.

On July 20, 2020, Heidi filed a petition for rule to show cause. Heidi alleged Jace informed her that neither he nor the trust would continue paying child support. As of June 15, 2020, Jace failed to pay his child support obligations to Heidi.

The court held a hearing on the petition to modify child support and the rule to show cause. At the hearing, Jace testified that the trust disbursements are his sole source of income. He did not have a job but did attempt to find employment. However, he could not find a job that fit with his

schedule. He chose to stay home and take care of the children. However, he continued to look for employment.

¶ 8    The trust directly paid Jace's rent ($1425 per month), phone ($150 per month), utilities ($350 per month), and insurance ($325 per month). The trust gave Jace incidental expenses ($150 per week), gas ($50 per week), and groceries ($100 per week). The trust also paid his attorney fees ($1800), car repairs, and purchased a new vehicle. Jace did not know for sure how much he received from the trust but based his belief on an e-mail he received from a law firm associated with the trust that listed his disbursements.

¶ 9    Jace testified to his January 22, 2020, financial affidavit. The affidavit showed in January 2020, he received $3204.50 from the trust. In August 2019, he received $4346.70. In October 2019, he received $3980.26.

¶ 10    Pursuant to the court order, Jace directed the trust to make child support payments to Heidi. The trust made child support payments until Jace filed his petition to modify child support. Jace did not direct the trust to stop making child support payments. He did not know why the trust stopped paying Heidi. He denied telling Heidi that she did not deserve child support. In July 2020, he sent an e-mail to Tammy Humpage (the trust administrator) about paying Heidi's child support. Tammy did not respond to the e-mail. Jace did not attempt to follow up with Tammy. Jace believed he could not enter the bank because it had a stalking no-contact order against him. However, the trial court later took judicial notice of the fact that the order had expired well before the trust stopped making payments to Heidi.

¶ 11    Heidi testified that in May 2020, Jace told him she did not deserve child support payments. He also told her he would not continue paying child support. Jace stopped making child support payments and owed her $5336 at the time of the hearing.

¶ 12    On February 2, 2021, the court entered an order denying Jace's petition to modify child support. The court found that Jace failed to demonstrate a change in circumstances to support a modification to child support. The court found that Jace continued to receive trust income as his only source of income. The court further found Jace's allegation that the trust decreased his monthly distribution unsupported by the evidence. The court believed that in May 2020, Jace did tell Heidi that he would no longer pay child support because she did not deserve it. As to the petition for rule to show cause, the court found Jace in contempt. It sentenced him to an indefinite period of incarceration. The court provided that Jace could purge himself of contempt by posting a $6335 bond (the amount of unpaid child support at the time) and by remaining current on his child support obligation. The court stayed execution of the sentence and set the matter for a hearing to determine whether Jace purged himself of contempt.

¶ 13    On February 24, 2021, the court held a hearing to determine whether Jace purged his contempt. Jamie Shimer, the trust administrator at Hometown National Bank, testified. Jace did not direct the trust to stop making child support payments. Instead, the trust made a discretionary decision to stop paying Jace's child support obligation. Shimer believed that Jace had e-mailed her 8 or 10 times trying to direct the trust to make child support payments. She believed he began sending her e-mails in December 2020 (before the contempt order). According to Shimer, the trust would pay Jace's bond to effectuate Jace's release from custody.

¶ 14    Ultimately, the court found Jace willfully disobeyed the contempt order and failed to purge himself of contempt. The court placed Jace in custody. The order provided that Jace could purge himself of contempt by posting a $7702 bond (the amount of unpaid child support).

¶ 15    On February 26, 2014, the trust posted a $7702 bond on behalf of Jace. Jace was released from custody, and the bond turned over to Heidi to satisfy Jace's unpaid child support.

¶ 16    Jace appeals.

¶ 17                                II. ANALYSIS

¶ 18                       A. Petition to Modify Child Support

¶ 19    Jace argues that the trial court abused its discretion when it denied his petition to modify his child support obligation. Jace contends that a change in circumstances necessitated a decrease in his obligation. Modification of child support must be decided by the circuit court based on the facts and circumstances of each case and will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Lugge*, 2020 IL App (5th) 190046, ¶ 15. An abuse of discretion will only occur where no reasonable person could agree with the position taken by the trial court. *In re Marriage of Garrett*, 336 Ill. App. 3d 1018, 1020 (2003). Upon review, we find Jace failed to present any evidence of a change in circumstance to justify modifying his child support obligation.

¶ 20    An order for child support may be modified "upon a showing of a substantial change in circumstances." 750 ILCS 5/510(a)(1) (West 2020). There is no precise formula for a substantial change in circumstances. *In re Marriage of Solecki*, 2020 IL App (2d) 190381, ¶ 73. "The law is clear that only some change in circumstances *of any nature* that would justify equitable action by the court in the best interests of the child is required." (Emphasis in original.) *In re Marriage of Singleteary*, 293 Ill. App. 3d 25, 35 (1997). Absent the threshold showing of a substantial change, the trial court may not reach the question of whether child support should be modified. *In re Marriage of Armstrong*, 346 Ill. App. 3d 818, 823 (2004).

¶ 21    In this case, the change in circumstance alleged in Jace's petition to modify child support is that Jace's monthly distribution from the trust decreased to $695 per month, resulting in a yearly benefit of $8340. This allegation proved to be false. Jace's July 2020 financial affidavit showed that he received $3073 trust income. Attachments to his financial affidavit showed the trust paid

Jace $4246 in August 2019, $4110.84 in September 2019, and $3980.36 in October 2019. When the court originally set the child support obligation, Jace's sole income came from the trust. When he filed his petition to modify child support, his sole source of income came from the trust. Throughout the entire period, Jace remained unemployed. No change in circumstances occurred. The court did not abuse its discretion when it denied Jace's petition to modify child support.

¶ 22        In reaching this conclusion, we reject Jace's argument that the trust's decision to stop making child support payments constituted a change in circumstance requiring a modification of his child support obligation. Whether the trust paid Heidi's child support directly is irrelevant. The trust is Jace's sole source of income. That income is the basis for Jace's child support obligation. His child support obligation was not calculated based on whether the trust would make the payments. Thus, the trust's unilateral decision to stop paying child support is not a change in circumstance.

¶ 23        We also reject Jace's argument that the indirect benefits paid by the trust for Jace's expenses are not "gross income" and should not be used to calculate his child support obligation. Specifically, Jace contends that trust payments made directly for rent and other monthly bills cannot be considered income for calculating his child support obligation. To begin with, Jace did not allege this as a change of circumstance to support his petition to modify child support. Such an argument would fail given that it is not a change in circumstance. This existed at the time the court originally set his child support obligation.

¶ 24        In essence, Jace's argument on appeal is a challenge to the prior order setting his child support obligation. He did not appeal that order. In any event, we reject his argument. Gross income is income from all sources. See 750 ILCS 5/505(a)(3)(A) (West 2020). It does not matter if the trust paid Jace directly or paid his expenses directly. In either case, Jace received a benefit

paid by the trust. The payments are gross income for purposes of calculating Jace's child support obligation.

¶ 25                                  B. Contempt

¶ 26        Next, Jace asks this court to reverse the order finding him in indirect civil contempt for failing to pay his child support obligation. He contends he did not willfully fail to pay child support as he had no authority to direct the trust to make child support payments to Heidi. He argues it was "unjust and wrongful" for the trial court to have him taken into custody and "held for ransom" to force the trust to pay a bond equal to the child support arrearage. Although neither party raised the issue on appeal, we find the issue moot.

¶ 27        An issue is moot where " 'intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party.' " *Felzak v. Hruby*, 226 Ill. 2d 382, 392 (2007) (quoting *In re J.T.*, 221 Ill. 2d 338, 349-50 (2006)). The penalties in a civil contempt case serve only to coerce the contemnor to comply with a court order, and they cease when the contemnor complies. *People v. Covington*, 395 Ill. App. 3d 996, 1006 (2009). In other words, a civil contempt order is purged by compliance with the court's order. *People v. Boclair*, 119 Ill. 2d 368, 373 (1987). Where a party purges his contempt by satisfying the conditions of the contempt order, any appeal from the contempt order is moot. See, *e.g.*, *In re Marriage of Betts*, 155 Ill. App. 3d 85, 104 (1987) ("Actual payment of the entire amount *** renders the point moot.").

¶ 28        Here, the trust posted the required bond and secured Jace's release from custody. At oral arguments, counsel for Jace informed this court that the trust resumed making child support payments to Heidi and Jace is current on his child support obligation. There is nothing to be accomplished by reversing the contempt order. The bond Jace posted satisfied his child support arrearage. He is now current on his child support obligation. Jace fulfilled the conditions of the

contempt order and entirely purged himself of contempt. There is no further relief this court can afford Jace. An appeal concerning the merits of the trial court's contempt finding is now moot. See *In re Keon C.*, 344 Ill. App. 3d 1137, 1148 (2003) (paying child support arrearage and providing copy of insurance card purged the issues and rendered contempt claim moot). Consequently, we decline to address Jace's argument on this issue.

¶ 29                                  III. CONCLUSION

¶ 30        For the foregoing reasons, we affirm the judgment of the circuit court of La Salle County.

¶ 31        Affirmed.

¶ 32        JUSTICE McDADE, specially concurring:

¶ 33        I agree with the majority's conclusion that the trial court did not err when it denied Jace's petition to modify his child support obligations. I also agree with the majority's finding that Jace's challenge to the court's contempt order is moot. I write separately to highlight a matter that may affect the outcome of the contempt issue in future cases. The trust here is a *Special Needs* trust created to provide for the expenses of a person who receives state disability assistance. *See* 42 U.S.C. § 1396p (d)(4)(A) (OBRA trust). The beneficiary of a *Special Needs* trust does not receive the disbursement of trust assets; the trust administrator pays the expenses directly. *Id.* Nor does the beneficiary have the ability to direct payment of trust assets. *Id.* Therefore, I am not convinced that Jace (as the beneficiary) could have *willfully* refused to pay his child support obligations. However, because the trust administrator has posted his bond, satisfying the child support arrearage, and has indicated an intent to continue making child support payments, this court can afford Jace no further relief.